**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**CHRISTINA S.,**

    **Plaintiff,**

  **v.**        **Civil Action 3:22-cv-298
            Judge Michael J. Newman
            Magistrate Judge Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

  Plaintiff, Christina S., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

  Plaintiff previously filed an application for SSI on March 27, 2014. Her application proceeded to an administrative hearing and the ALJ issued an unfavorable decision. (R. at 65–94). The decision was also affirmed by this Court on September 30, 2019. (R. at 102–11).

  Plaintiff protectively filed her current application for SSI on January 27, 2020, alleging that she was disabled beginning August 19, 2016, due to worsening of PTSD (post-traumatic stress disorder), worsening of bipolar, anxiety, paranoia, dissociated disorder, asthma, stress induced seizures, fibromyalgia, POTS (postural orthostatic tachycardia syndrome), and cardia neurocardio syncope. (R. at 215–24, 242). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on July 13, 2021. (R. at 34–61). The

ALJ denied benefits in a written decision on August 24, 2021. (R. at 12–33). That became the final decision of the Commissioner when the Appeals Council denied review. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on October 21, 2022 (Doc. 1), and the Commissioner filed the administrative record on December 21, 2022 (Doc. 6). The matter has been briefed and is ripe for consideration. (Docs. 7, 8, 9).

### A. Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's hearing testimony as well as her statements to the agency:

*** In the function report, [Plaintiff] stated that her muscles are tight, and that she has stress-induced seizures (Exhibit C4E). She is unable to complete household chores or yard work because of exhaustion caused by her alleged fibromyalgia (Id.). [Plaintiff] estimated that she could walk to the end of her driveway and back, but not much longer due to her pain and shortness of breath (Id.). She also has difficulty sitting, seeing, talking, climbing stairs, using her hands, and performing various postural movements (Id.). Despite these limitations, [Plaintiff] did not report any physical limitations in her ability to take care of her personal needs and grooming (Id.). She is able to prepare simple meals for herself (Id.). She has a cane, walker, and brace, all of which were prescribed (Id.). The undersigned notes that [Plaintiff] has been observed using a walker at times (see, for example, Exhibits C2F at 112, C9F at 314), a prescription for an assistive device does not appear in the record. In the prior decision, Judge Anschuetz noted "that family members had suggested that [Plaintiff] use a walker but, apparently, she did not feel the need to use such a device (or any other type of ambulatory aid) outside of therapy sessions" (Exhibit C1A at 20).

At the hearing, [Plaintiff] testified that she has daily dizziness, but she has not passed out because of POTS in a number of years. When this happens, she lays down for between six and eight hours. She also keeps her legs elevated above her heart and uses compression stockings to help her circulation. [Plaintiff] does not currently have a license, however, and does not drive, and although her POTS has not limited her ability to drive, she posited that it potentially could.

(R. at 23–24).

In a function report, [Plaintiff] stated that she has difficulty remembering things, and needs to be reminded to take care of her personal needs and grooming, to take her medications, and to go places (Exhibit C4E). She does not follow either written or spoken instructions well, although she is better with written ones, and has general difficulty with memory, understanding, and following directions (Id.). At the

2

hearing, [Plaintiff] testified that she often has difficulty remembering what she is doing as a result of her concentration deficits.

(R. at 20).

In the function report, [Plaintiff] stated that she is afraid to be around others due to feelings of paranoia (Exhibit C4E). She generally avoids people and isolates herself, but still spends time speaking with her son regularly (Id.). She also has at least one friend who will go shopping for her (Id.). [Plaintiff] has general difficulty getting along with others, but has never lost a job because of workplace interpersonal difficulties (Id.). At the hearing, [Plaintiff] testified that she has difficulty trusting people and leaving her house.

\*\*\*

In the function report, [Plaintiff] stated that she has difficulty concentrating on things (Exhibit C4E). She cannot pay attention for more than a "couple minutes at a time," has difficulty with concentration and completing tasks, and "never" finishes things that she starts (Id.). At the hearing, [Plaintiff] testified that she has difficulty concentrating, and her mind will jump to many different things.

\*\*\*

In the function report, [Plaintiff] stated that she is in a constant state of worry, and cannot tell what is real (Exhibit C4E). She does not handle stress or changes in routine well; changes in her routine increase her stress level, and increases in stress can trigger seizures (Id.). At the hearing, [Plaintiff] testified that she rotates between manic and depressed episodes. During the depressed episodes, she lacks motivation to do anything, even to take care of her personal needs and grooming, and has regular crying spells. She has flashbacks every few days, often triggered by seeing anyone hurt or abused. She is always afraid, and believes that everything on television is based on her life as a result of being broadcast from her in-home WIFI system.

(R. at 21–22).

### B. Relevant Medical Evidence

The ALJ discussed Plaintiff's physical impairments as follows:

[Plaintiff]'s POTS is further substantiated by entries in lists of her past medical history indicating POTS, an irregular heartbeat, and a 2012 pacemaker placement (see, for example, Exhibit C1F at 18). Between at least April 2019 and November 2020, multiple emergency department physicians, including Andrew William Lee, M.D., Emily Jean Maupin, D.O., Roy Lee Johnson III, M.D., Brian Patrick Murray, D.O., and Rebecca S. Perry, D.O., diagnosed [Plaintiff] with chest or chest wall

3

pain, at times noting the condition as atypical (see, for example, Exhibits C1F at 22, C2F at 129, C9F at 64, 92, 216). In addition, Lisa M. Hemphill, CNP, included atypical chest pain as a diagnosis on discharge from an overnight hospitalization in September 2019, noting the condition as "in the setting of cocaine use" (Exhibit C2F at 112). Between at least June 2019 and June 2021, multiple other treatment providers, including Bal Krishna Srivastava, M.D., Ramesh K. Gandhi, M.D., Carol Lynne Griffith, APRN, and Alicia N. Walls, CNP, also noted diagnostic assessments or impressions of chest pain or discomfort, and added diagnoses of either noncardiogenic or vasovagal syncope, POTS, and/or the presence of the pacemaker (see, for example, Exhibits C1F at 9, 16, C5F at 10, C7F at 15, C10F, C13F at 1-2). Dr. Gandhi also noted an assessment of congestive heart failure in November 2020 (Exhibit C10F). In June 2019 and November 2020, Bruce Gearhart, M.D., and Jarrod Curry, D.O., reviewed x-ray imaging and noted findings or impressions of a stable, unremarkable, and/or unchanged pacemaker, with Dr. Gearhart also noting an impression of an unremarkable cardiomediastinal silhouette (Exhibits C1F at 39, C9F at 110).

(R. at 18).

The ALJ discussed Plaintiff's mental impairments as follows:

In addition to medical evidence considered in the prior decision (see Exhibit C1A), [Plaintiff]'s anxiety and depressive disorders are substantiated by entries in lists of her past medical history (see, for example, Exhibit C1F at 18). Dr. Ghandi also assessed [Plaintiff] with mixed anxiety and depressive disorder in November 2020 (Exhibit C10F), and Ms. Walls assessed [Plaintiff] with anxiety and depression in June 2021 (Exhibit C13F at 1). In addition to medical evidence of record considered in the prior decision (see Exhibit C1A), [Plaintiff]'s post-traumatic stress disorder (PTSD) is substantiated by the March 2021 assessment by mental health counselor Jessica Nye (Exhibit C12F).

(R. at 18–19).

*** On multiple occasions, including at least as recently as January 2021, [Plaintiff] reported not having difficulty remembering things (see, for example, Exhibits C2F at 54, C7F at 25, C9F at 279). At other times, even in cases when she has reported having memory difficulties, her memory has been assessed as normal or within functional limits (see, for example, Exhibits C2F at 65, C7F at 6). In some cases, however, she has been assessed as having some level of memory deficit (see, for example, Exhibit C2F at 110).

She does not follow either written or spoken instructions well, although she is better with written ones, and has general difficulty with memory, understanding, and following directions (Id.). ***

4

*** Based on his review of the record and [Plaintiff]'s subjective complaints, Judge Anschuetz found that [Plaintiff] had a moderate level of limitation in this area (Exhibit C1A at 15-16, 17). [Plaintiff] has been repeatedly observed as cooperative during medical examinations (see, for example, Exhibits C2F at 28, 92, C9F at 70, 222).

*** Based on his review of the record and [Plaintiff]'s subjective complaints, Judge Anschuetz found that [Plaintiff] had a moderate level of limitation in this area (Exhibit C1A at 16, 17). [Plaintiff]'s concentration has been assessed as normal or intact during both medical and mental health examination and treatment sessions, and she has reported not having difficulty concentrating at least as recently as January 2021 (see, for example, Exhibits C2F at 28, C3F at 11, C8F at 1, 10, C9F at 222). At other times, her concentration has been assessed as only "OK," fair, or distorted (see, for example, Exhibits C3F at 14, 18, C7F at 25, C8F at 4, 13). ***

*** As recently as January 2021, [Plaintiff] reported not having difficulty making decisions (Exhibit C7F at 25). [Plaintiff]'s insight and judgment have been assessed as good, normal, or intact during medical examinations (see, for example, Exhibits C1F at 14, C2F at 13, 28, C6F at 32, C7F at 6, 31, C9F at 98, 262). She has been noted to have poor insight into her medical history, however, including what her medications are for (Exhibit C2F at 100). ***

(R. at 20–21).

## C. The ALJ's Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 27, 2020, the application date. (R. at 18). The ALJ determined that Plaintiff suffered from the following severe impairments: history of postural orthostatic tachycardia syndrome, anxiety disorder, depressive disorder, post-traumatic stress disorder. (*Id.*). Yet the ALJ found that none of Plaintiff's impairments, either singly or in combination, meet or medically equal a listed impairment. (R. at 20).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following exceptions: No more than occasional crouching, crawling, kneeling, stooping, balancing, or climbing of ramps and stairs. No climbing of ladders, ropes, and scaffolds. No work around hazards such as unprotected heights or dangerous machinery. No driving of automotive equipment.

5

No exposure to strong magnetic fields. No concentrated exposure to temperature extremes or respiratory irritants. [Plaintiff] is limited to performing simple, routine, and repetitive tasks. No more than occasional contact with supervisors and co-workers. No contact with the general public. No fast-paced production work or jobs which involve strict production quotas.

(R. at 22).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 24).

The ALJ determined that Plaintiff has no past relevant work. (R. at 26). Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform light exertional, unskilled jobs that exist in significant numbers in the national economy, such as a marker, mail clerk or inspector and hand packager; along with sedentary exertional unskilled jobs that exist in the national economy such as a document preparer, inspector, or table worker. (R. at 26–27). He therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since January 27, 2020, the date the application was filed (20 CFR 416.920(g))." (R. at 28).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this

end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In her Statement of Errors, Plaintiff contends that the ALJ erred by using the wrong legal standard, thus creating an unwarranted additional procedural burden for Plaintiff to overcome. (Doc. 7 at 5–8). The Commissioner counters that the ALJ made clear throughout his decision that the previous decision was not binding and thoroughly discussed the medical evidence from the relevant period, freshly looking at the new application.

### A. The ALJ's Compliance with *Drummond* and *Earley*

Plaintiff argues that the ALJ reversibly erred because he applied *Drummond* (and not *Earley*), thereby creating an unwarranted additional procedural burden for her to overcome. (Doc. 7). The Undersigned disagrees.

#### 1. Drummond*, Earley*, and Fresh Review

In *Drummond v. Commissioner of Social Security*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997). In that case, the claimant's initial claim for SSI was denied when an ALJ found that she was capable of sedentary work. *Id*. at 838. When the claimant later re-filed her disability claim, a second ALJ found that she was capable of medium-level work—unlike the sedentary RFC finding of the first ALJ—and denied the re-filed claim. *Id*. at 839. After explaining that "*[r]es judicata* applies in an administrative law context following a trial type hearing," the Sixth Circuit held that the second ALJ was bound by the sedentary RFC determination of the first ALJ because

there was no new or additional evidence of an improvement in the claimant's condition. *Id*. at 841–42. The Sixth Circuit reasoned that "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id*. The Social Security Administration subsequently issued an Acquiescence Ruling explaining how the ruling in *Drummond* would be applied to claims in the Sixth Circuit:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim . . . unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

AR 98-4(6), *Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II and XVI of the Social Security Act*, 1998 WL 283902, at *3 (June 1, 1998).

Then, in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), the Sixth Circuit further clarified how *res judicata* applies to administrative proceedings. When a claimant files a later application covering the same period as an earlier application, explained the Court, *res judicata* applies absent good cause to revisit the earlier determination. *Id*. at 933. But *res judicata* does not apply when a claimant files a subsequent application seeking benefits for a different period. Instead, "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Id*. The Court cautioned that "fresh review is not blind review." *Id*. at 934. Although an ALJ evaluating a subsequent application is not bound to follow a previous determination, the ALJ may "nevertheless consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id*. Accordingly, "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id*. at 933.

Since then, this Court has said that *Earley* "clarified" the Court's decision. *Teasley v. Comm'r of Soc. Sec.*, No. 2:18-cv-1079, 2019 WL 2559514 at *5 (S.D. Ohio June 21, 2019). "The Sixth Circuit explained that 'the key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications'—do not prohibit the Social Security Administration 'from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in a prior proceeding.'" *Id.* (citing *Earley*, 893 F.3d at 933).

Therefore, as this Court has noted, "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.* Thus, an ALJ's reference to *Drummond* does not automatically result in reversal. In fact, in *Dugan v. Commissioner of Social Security*, an early post-*Earley* decision, the Sixth Circuit cited to *Drummond* and noted that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 742 F. App'x 897, 901–02 (6th Cir. 2018). The Court explained that "[i]n such cases, '[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.'" *Id.* The Court found that the ALJ's pre-*Earley* analysis satisfied the legal standard because she ultimately found new and material evidence of medical improvement which meant she was not bound by a prior ALJ's determination. *Id.* Said simply, citation to *Drummond* was not in and of itself enough to warrant remand. This Court, as well as other courts in the circuit, have come to the same conclusion.

In *Parsons v. Commissioner of Social Security*, for instance, the Court noted that "[the] ALJ [] failed to mention *Earley* even though it is applicable here. Nevertheless, [the ALJ] followed the

9

precepts in *Early* by finding that new evidence undermined ALJ Bruce's RFC assessment." No. 2:20-cv-2594, 2021 WL 1015910, at *7 (S.D. Ohio Mar. 17, 2021). The same was true in *Mitchell v. Commissioner of Social Security*, where the United States District Court for the Eastern District of Michigan explained that "the Court is less concerned as to whether the ALJ merely stated the wrong legal standard, and more concerned as to whether the ALJ applied the wrong legal standard. While a post-*Earley* ALJ's recitation of the pre-*Earley* standard raises a yellow flag, it is nevertheless possible that such a post-*Earley* ALJ decision could functionally comply with *Earley* if the ALJ gave the evidence a fresh look." No. CV 20-13414, 2022 WL 265869, at *2 n.3 (E.D. Mich. Jan. 28, 2022). *See also Civitarese v. Comm'r of Soc. Sec.*, No. 1:19-cv-2015, 2020 WL 4366077, at *14 (N.D. Ohio July 30, 2020).

So, while citation to *Drummond* without *Earley* raises a yellow flag, the ultimate question is whether the ALJ freshly reviewed the evidence.

       2. *The ALJ's Fresh Review*

The previous decision denying Plaintiff's applications for benefits was issued on August 18, 2016, and alleged disability beginning in January 1998. (R. 65–86). The applications ultimately were denied at the hearing stage by Administrative Law Judge Eric Anschuetz on August 18, 2016. (*Id.*). The decision was also affirmed by this Court. (R. at 102–11). This time around, Plaintiff applied for supplemental security income in January 2020, alleging disability beginning on April 10, 2019.

A review of the ALJ's opinion shows that he reviewed the evidence during the applicable period—and also reviewed prior history and evidence with fresh eyes. To begin, the Undersigned notes the ALJ's own words. More than once, the ALJ wrote he was not bound by the prior ALJ's

decision. (R. 16 ("Judge Anschuetz's [RFC] determination is not binding."), *id.* (Judge Anschuetz's past relevant work determination is not binding[.]").

And the ALJ's various conclusions demonstrate that he had that understanding. Indeed, the ALJ's analysis shows that he independently evaluated the evidence for the new application period. As to Plaintiff's physical condition, the ALJ thoroughly discussed the medical evidence relating to Plaintiff's postural orthostatic tachycardia syndrome ("POTS"). (R. at 18). The ALJ began by highlighting evidence from before the relevant period, including the 2012 placement of a pacemaker. (R. at 18, citing R. at 316). Turning to the at-issue period, the ALJ noted that the record documented multiple instances of chest or chest wall pain, at times including that the pain was atypical. (R. at 18, citing R. at 320, 478, 931, 959, 1083). The ALJ further discussed "diagnostic assessments or impressions of chest pain or discomfort, and added diagnoses of either noncardiogenic or vasovagal syncope, POTS, and/or the presence of the pacemaker" (R. at 18, citing R. at 307, 314, 769, 828, 1285–92, 1295–96). The ALJ also noted Plaintiff's November 2020 assessment of congestive heart failure. (R. at 18, citing R, at 1285–92). On the other side of the ledger, the ALJ observed that June 2019 and November 2020 medical appointments and X-ray reviews documented "stable, unremarkable, and/or unchanged pacemaker" and an "unremarkable cardiomediastinal silhouette" (R. at 18, citing R. at 337, 977).

The ALJ similarly discussed the objective mental health evidence in the record when considering the listings and "B criteria" at step three of the sequential disability analysis. (R. at 20–22). In the course of this discussion, the ALJ noted that there were instances where Plaintiff was found to have some memory deficit but also assessed to have memory within functional limits and there were times when she reported no difficulty remembering things. (R. at 20, citing R. at 403, 414, 459, 819, 838, 1146). The ALJ also noted that Plaintiff was consistently observed to be

cooperative during her medical examinations.  (R. at 21, citing R. at 377, 441, 937, 1089).

Regarding Plaintiff's ability to concentrate, the ALJ remarked that, on occasion, Plaintiff's

concentration has been assessed as "only 'OK', fair, or distorted" but that in both medical and

mental health appointments her concentration had been assessed as normal and intact and she

reported not having difficulty concentrating in January 2021.  (R. at 21, citing R. at 377, 752, 755,

759, 838, 856, 858, 864, 867, 1089).  The ALJ also wrote that while the record showed Plaintiff to

have poor insight on her medical history, her insight and judgment had been assessed as "good,

normal, or intact" during examinations.  (R. at 21, citing R. at 312, 362, 377, 449, 807, 819, 844,

965, 1129).  Similarly, the ALJ noted that in January 2021, Plaintiff reported no difficulty making

decisions.  (R. at 21, citing R. at 838).

The ALJ also considered Plaintiff's daily activities in accordance with the regulations.  (R.

at 23–24).  *See* 20 C.F.R. § 416.929(c)(3)(i); SSR 16- 3p.  *Blacha v. Sec'y of HHS*, 927 F.2d 228,

231 (6th Cir. 1990).  The record documents Plaintiff's ability to care for herself, which the ALJ

appropriately considered.  (R. at 23, citing R. at 250–57).  *See Warner v. Comm'r of Soc. Sec.*, 375

F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability

to conduct daily life activities in the face of his claim of disabling pain").  In addition to discussing

Plaintiff's daily activities, throughout the decision, the ALJ also discussed other regulatory factors

for the subjective symptom analysis.  (R. at 18–25).  *See* 20 C.F.R. § 404.1529(c)(3).  For instance,

the ALJ discussed Plaintiff's pacemaker and noted that there were no instances of "current or

ongoing symptoms of syncope or near syncope since the claimant the placement of her pacemaker"

(R. at 20).  *See* 20 C.F.R. § 416.929(c)(3)(v) ("Treatment, other than medication, you receive or

have received for relief of your pain or other symptoms").  "Impairments that are controllable or

amenable to treatment cannot support a finding of disability."  *Gant v. Comm'r of Soc. Sec.*, 372 F.

App'x 582, 585-86 (6th Cir. 2010) (citing 20 C.F.R. § 404.1529(c); *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984)).

The ALJ also addressed Plaintiff's mental health treatment regimen. The ALJ expressly remarked that Plaintiff's mental impairments did not require hospitalization and that Plaintiff did not "appear to have required any treatment beyond taking prescribed medications and attending occasional counseling sessions" (R. at 22). *See* 20 C.F.R. §416.929(c)(3)(iv) ("[t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms"). The ALJ explained in summary that the record did not support Plaintiff's alleged work preclusive limitations and showed she inconsistently reported or otherwise denied fatigue. (R. at 24–25).

The ALJ also reviewed anew the medical opinions and prior administrative medical findings. (R. at 25). 20 C.F.R. § 416.920c. There were both physical and mental prior administrative medical findings from the initial and reconsideration stages. (R. at 118–20, 126–28). All four state agency physicians in this case adopted the residual functional capacity of the prior ALJ's decision. (*Id.*) This residual functional capacity limited Plaintiff to light work with postural, environmental, and mental limitations. (*Id.*) But under the ALJ's fresh review, he determined that evidence submitted since the prior decision justified a more restrictive residual functional capacity. (R. at 25). Thus, the ALJ added an environmental limitation of no exposure to strong magnetic fields due to Plaintiff's cardiac impairment. (R. at 22, 24). The ALJ also included a limitation of no contact with the general public due to the possibility of triggering Plaintiff's anxiety symptoms. (*Id.*). *See McQuillen v. Comm'r of Soc. Sec.*, No. 2:20-cv-6006, 2021 WL 6133277, at *7 (S.D. Ohio Dec. 29, 2021), *report and recommendation adopted by* 2022 WL 867270 (S.D. Ohio Mar. 23, 2022) ("Thus, the limitations found by the ALJ in her RFC

determination were more restrictive than those proposed by these medical experts. If the ALJ committed any error in her RFC determination, then, the error was surely harmless.").  Notably, Plaintiff has identified no evidence in the record suggesting that any greater limitations in the RFC were required to accommodate her impairments.

In an effort to undermine the ALJ's analysis, Plaintiff relies on cases where courts have found that the ALJ appeared to be bound or otherwise hamstrung by prior decisions in contravention of *Earley*.  *See Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723, at *4 (S.D. Ohio Mar. 8, 2023) (finding that where an ALJ treats a prior RFC determination "as a mandatory starting place for his own RFC determination[,]" *Earley* is violated).  But each decision must be evaluated on its own merit.  In this case, the fairest read of the ALJ's opinion is that he reviewed the evidence independently—without any thumb on the scale—and crafted a record-based RFC. That is all that is required, even if the ALJ cited *Drummond* without *Earley*.  *See Tammy T. v. Comm'r of Soc. Sec.*, No. 1:22-cv-248, 2023 WL 3432299 (S.D. Ohio May 13, 2023) (finding that though the ALJ did not mention *Earley* and adopted the former ALJ's mental RFC, the new ALJ had provided the "fresh look to which plaintiff was entitled[ ]" by thoroughly reviewing the evidence of record, including records post-dating the prior ALJ's determination);  *Dennis D. v. Comm'r of Soc. Sec.*, No. 3:22-cv-202, 2023 WL 2943822 (S.D. Ohio Apr. 14, 2023) (finding that the ALJ "failed to mention *Earley*, [but] gave the evidence the fresh review to which plaintiff was entitled" because the ALJ "fully examined all of the medical evidence - including the medical records completed after [the former ALJ's] prior decision - and fashioned a new and different RFC."), *report and recommendation adopted by* 2023 WL 3979215 (S.D. Ohio June 13, 2023); *Brent v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 159118 (E.D. Mich. Aug. 21, 2018) (analyzing whether the ALJ took seriously his duty to review the evidence anew and recommending

affirmance despite the ALJ's use of the *Drummond* framework), *report and recommendation adopted by* 2018 U.S. Dist. LEXIS 157841 (E.D. Mich. Sept. 17, 2018). Plaintiff also makes much of the fact that the ALJ mentions the prior decision multiple times. But, as the Sixth Circuit has said, that is good judging. *Earley*, 893 F.3d at 933 (noting that "a later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making").

In sum, remand is unwarranted here.

### IV.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

### V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court

adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: July 17, 2023                           /s/ Kimberly A. Jolson
                                              KIMBERLY A. JOLSON
                                              UNITED STATES MAGISTRATE JUDGE